UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FIBER MORENO,

      Plaintiff,

v.                                 CASE NO: 8:09-cv-930-T-23TGW

REGIONS BANK,

      Defendant.

_____/

**O R D E R**

The plaintiff sues under the Fair Labor Standards Act, 29 U.S.C. § 201 <u>et</u> <u>seq.</u> (the "FLSA"), to recover overtime compensation.  Pursuant to Local Rule 3.08, the parties announced (Doc. 11) a settlement and jointly moved (Doc. 14) for approval of the settlement agreement.  See <u>Lynn's Food Stores, Inc. v. United States</u>, 679 F.2d 1350 (11th Cir. 1982).  An April 29, 2010, order (Doc. 15) rejects the parties' initial settlement, which contains an unenforceable "confidentiality" agreement.  The parties jointly move (Doc. 16) for approval of an amended settlement agreement that lacks the confidentiality provision.  At a May 21, 2010, hearing, the parties argued in support of the proposed settlement.

The parties state that (a) the settlement compensates the plaintiff for the unpaid wages, liquidated damages, attorneys' fees, and costs claimed in the complaint; (b) the attached agreement includes every term and condition of the parties' settlement; (c) the settlement "represents a minor compromise to the high end of Plaintiff's claim for unpaid overtime compensation"; and (d) the settlement resolves a bona fide dispute over the number of hours worked.  See <u>Dees v. Hydradry, Inc.</u>, __ F. Supp. 2d __, 2010 WL

1539813 (M.D. Fla. Apr. 19, 2010).  The settlement agreement (Doc. 16-1) provides that

the defendant will pay the plaintiff $8,462.08, which amount includes $4,231.04 for

unpaid overtime wages and $4,231.04 for liquidated damages.  Additionally, the

defendant will pay $6,537.91 for a reasonable attorney's fee and costs, which the

parties negotiated separately and without regard to the amount paid to the plaintiff.  See

Bonetti v. Embarq Mgmt. Co., __ F. Supp. 2d __, 2009 WL 2371407 (M.D. Fla. Aug. 4,

2009).  These provisions appear reasonable.  However, the settlement agreement (Doc.

16-1) contains the following release:

> In exchange for the Consideration, as set forth in Paragraph 2 . . ., Plaintiff
> for himself, attorneys, heirs, executors, administrators, successors and
> assigns hereby waives and releases, knowingly and willingly, Defendant,
> its heirs, executors, administrators, legal representatives, parent
> corporations, predecessor companies, insurers, past, present and future
> divisions, subsidiaries, affiliates and related companies and their
> successors and assigns and all past, present and future directors, officers,
> employees and agents of these entities, personally and as directors,
> officers, employees and agents, ("Released Parties") from any and all
> claims of any nature whatsoever Plaintiff has arising out of his
> employment with Defendant, known or unknown, including but not limited
> to, any claims Plaintiff may have under federal, state or local employment,
> labor, or anti-discrimination laws, statutes and case and law and
> specifically claims including, but not limited to, any claims or allegations
> contained in or relating to the Lawsuit, arising under the federal Age
> Discrimination in Employment Act, The Older Worker Benefit Protections
> Act, the Civil Rights Acts of 1866 and 1964, as amended, the Americans
> with Disabilities Act, the Employment Retirement Income Security Act of
> 1974 ("ERISA"), the Family and Medical Leave Act, the Rehabilitation Act
> of 1973, the Fair Labor Standards Act, the Labor-Management Relations
> Act, the Equal Pay Act and the Worker Adjustment Restraining and
> Notification Act, the Florida Civil Rights Act, the Florida AIDS Act, the
> Florida Equal Pay Law, the Florida Wage Discrimination Law, the Florida
> Law Prohibiting Discrimination on the Basis of Sickle Cell Trait, the Florida
> Constitution, Florida common law and any and all other applicable state,
> federal, county or local ordinances, statutes or regulations, including
> claims for attorneys' fees.  Furthermore, if any charge of discrimination is
> brought on Plaintiff's behalf, Plaintiff dismisses any claim to any benefits
> as a result of such charge.  Plaintiff agrees that he will not apply for any

positions with any of the Released Parties at any rime.  Plaintiff has been fully compensated for his claims under the Fair Labor Standards Act. Plaintiff also represents and certifies that he has received full payment for all hours worked while employed by Defendant, including overtime hours, bonuses and vacation pay, and has received all benefits and leaves available or requested under the Family Medical Leave Act.  Finally, Plaintiff has not suffered any workplace injuries while working for Defendant.

Although the proposed compromise, as reformulated, appears otherwise reasonable and justified, the value of the pervasive release effectively eludes confident assessment and, consequently, the "fairness" of the proposed compromise effectively eludes confident assessment.

Discussion

The analysis of the pervasive release in an FLSA settlement begins with an acknowledgment that a settlement of the typical civil action includes the parties' reciprocal, general release, which typically encompasses claims "known and unknown" and which often exhaustively lists "without limitation" the specific claims included in the release (in an effort to exclude the prospect that some arcane and unimagined claim might linger unextinguished and apparently over against the possibility that the law requires or might require that a release conspicuously identify by name a particular claim to ensure the release's effectiveness as to that claim).  The reciprocal, general release is incontestably a staple of accepted and common litigation practice.[1] But, an FLSA action is different.

---

[1] "It is common practice in the case of releases that are general in form to include words to the effect that the release extends to 'all claims, demands, and causes of action whatsoever'" between the parties. 10 Fla. Jur. 2d Compromise, Accord, and Release § 61 (2010).  In fact, to encourage expeditious settlement of litigation, Florida law recognizes the enforceability of a general release.  Carey-All Transport, Inc. v. Newby, 989 So. 2d 1201 (Fla. 2d DCA 2008); see also Mazzoni Farms, Inc. v. DuPont De Nemours & Co., 761 So. 2d 306 (Fla. 2000).  A broadly worded release may extinguish even a claim unknown to either party at the execution of the release.  See Stiff v. Newman, 134 So. 2d 260 (Fla. 2d DCA 1961).

Excepting the class action, in which court approval of a settlement is comprehensively required, settlement of the typical civil action is a matter commended to the discretion of the parties, whose discretion is informed by their respective lawyers, whose advice is informed in turn by their respective professional skill and experience. Whether occurring in a civil action to redress an egregious injury and to recover enormous money damages, whether arising from personal or commercial injury great or small, or whether implicating consequences to the public at large, settlement of a civil action remains almost exclusively committed to the informed discretion of the parties.

Settlement of an action under the FLSA stands distinctly outside the practice common to, and accepted in, other civil actions.  As commanded in Lynn's Food, settlement of an FLSA action requires review and approval by the district court or the Department of Labor.  As explained at exhausting length in Hydradry, judicial review of the proposed settlement proceeds from the kindred notions of "fairness" and "full compensation" to the employee.  Hydradry explains that an employee cannot relinquish or modify a claim under the FLSA except in exchange for "full compensation"; the employer is unconditionally obligated to pay the full amount owed.  Problems, for example, in proving hours-worked or "non-exempt" status—or the presence of some other lawful defense to payment (if any)—may warrant a reasonable compromise, if the court approves.  Otherwise, the FLSA unconditionally obligates the employer to pay full compensation in exchange for the assigned working time.  Hydradry explains that a non-cash, but still valuable, concession by an employee affects both the "fairness" and the "full compensation" component of a settlement.  A gratuitous concession in exchange for the required payment is "unfair" because (1) the FLSA obligates the

employer without exception or condition to pay the full amount owed and (2) a valuable, non-cash concession extended to the employer in exchange for otherwise "full compensation" effectively reduces the employer's payment by an amount equal to the value of the concession (and accordingly reduces the employer's payment to less than "full compensation").

In either event, the court will not approve.  So says <u>Lynn's Food</u> and so says the Supreme Court and other authority cited in <u>Hydradry</u>.  To civil litigants and their attorneys, this result may appear unusual —and it is unusual.  Bestowing a special status on an FLSA claim and not on another civil claim that seems more portentous might strike the observer as unwarranted or even unwise, but the law on this matter, although largely unexplored and unknown by both bench and bar, is clear as spring water.

<u>I. Compromise and Release of an FLSA Claim</u>

The FLSA embodies a congressional intent to ensure that "all our able-bodied working men and women [receive] a fair day's pay for a fair day's work."  Letter to Congress from President Franklin D. Roosevelt (May 24, 1937) (reprinted in H.R. Rep. No. 101-260 (Sept. 26, 1989), 1989 U.S.C.C.A.N. 696-97).  By prescribing a minimum wage and overtime, the FLSA protects "certain groups of the population from sub-standard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce."  <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 706 (1945).  A singular statute, the FLSA prohibits a private agreement altering an employee's right to a minimum wage and overtime.  For example, the employer and the employee may not agree for the employee to work prospectively for

an overtime rate of one-and-a-quarter times the regular hourly rate; the FLSA requires

one-and-a-half times the regular hourly rate.  Although prohibiting a contract that

restricts the FLSA rights of an employee, the FLSA leaves unanswered whether an

employee may compromise a claim for unpaid wages.

Answering this question, Lynn's Food Stores, Inc. v. United States, 679 F.2d

1350, 1354 (11th Cir. 1982), permits compromise of an FLSA claim under the

supervision of either the Secretary of Labor[2] or the district court:

> If a settlement in an employee FLSA suit . . . reflect[s] a reasonable
> compromise over issues, such as FLSA coverage or computation of back
> wages, that are actually in dispute; we allow the district court to approve
> the settlement in order to promote the policy of encouraging settlement of
> litigation.

However, Lynn's Food neither prescribes a method for "approving" an FLSA

compromise nor identifies any factor for evaluating the "fairness" of the compromise.

Lynn's Food merely authorizes approval of a compromise that "is a fair and reasonable

resolution of a bona fide dispute over FLSA provisions."  679 F.2d 1354.

### II. Evaluating the "Fairness" of an FLSA Compromise

The Middle District of Florida has experienced an influx of FLSA cases in recent

years[3] and has labored to develop a comprehensive and efficient method of reviewing

an FLSA compromise.  The typical FLSA action settles promptly and for a relatively

---

[2] See 29 U.S.C. § 216(c) ("The Secretary [of Labor] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.").

[3] See Bonetti v. Embarq Mgmt. Co., __ F. Supp. 2d __, 2009 WL 2371407, at 2 (M.D. Fla. Aug. 4, 2009) ("[N]early 2,500 FLSA cases were filed [in the Middle District of Florida] in 2007 and 2008, and approximately 20% of all civil cases pending in this District are FLSA lawsuits.").

small amount (often less than a thousand dollars).  An evaluation of the "fairness" of the compromise in an FLSA case often relies on little more than the pleadings and a smattering of explanation in a perfunctory motion for approval.

After evaluating both the statute and the decisional precedent, Dees v. Hydradry, Inc., __ F. Supp. 2d __, 2010 WL 1539813 (M.D. Fla. Apr. 19, 2010), describes a method for evaluating an FLSA compromise:

> If presented in an FLSA action with a notice of settlement, a stipulation for dismissal, an offer of judgment, or the like, the judicial approval required by Lynn's Food and the public's right of access to a judicial proceeding compel the parties to file their agreement in the public docket of the district court.  As an initial matter, the district court must determine whether the employee purports to compromise an FLSA right. If judicial scrutiny confirms that the parties' settlement involves no compromise, the district court should approve the settlement and dismiss the case (if the employer has paid) or enter judgment for the employee (if the employer has not paid).  If the parties' proposed resolution requires the employee to compromise an FLSA right, the district court must scrutinize the compromise for "fairness."

> An employee's right to a minimum wage and overtime is unconditional, and the district court should countenance the creation of no condition, whether confidentiality or any other construct, that offends the purpose of the FLSA.  An employer is obligated unconditionally to pay a minimum wage and overtime to the complainant and his fellow employees; the district court should not become complicit in any scheme or mechanism designed to confine or frustrate every employee's knowledge and realization of FLSA rights.  Accordingly, the district court evaluating an FLSA compromise should examine first the "internal" fairness of the compromise, including the existence of a bona fide dispute and the absence of a prospective waiver, confidentiality agreement, or other provision antithetical to the FLSA.  If the proposed compromise is fair and reasonable to the employee, the court should consider whether any other external factor, such as the need to resolve definitively an issue affecting similarly situated employees, recommends rejecting the compromise.  If the compromise is fair and reasonable to the employee and furthers the implementation of FLSA rights in the workplace, the court should approve the compromise.

Although Hydradry addresses the fairness of a settlement that includes the release of an FLSA claim, the present parties (and the parties in other FLSA cases) request approval of a settlement that includes the plaintiff's release of a dizzying array of claims, known and unknown, against the defendant. The pervasive scope of the release presents an issue not considered overtly in Hydradry.

III. A Pervasive Release in an FLSA Compromise Is Unfair

In the typical settled case, the parties (especially the defendant) design for a complete disengagement from each other, and a comprehensive settlement coupled with a general release usually accomplishes the intended effect. The district judge often remains unaware of the terms of the compromise, and the post-settlement dismissal of the action implies neither approval nor disapproval of any aspect of the parties' settlement agreement. In these cases, the reciprocal, general release remains an accepted and common litigation practice. Although this disengagement almost uniformly accompanies the settlement of the typical civil action, settlement of an FLSA action requires judicial approval. A pervasive release in an FLSA settlement introduces a troubling imponderable into the calculus of fairness and full compensation.

In nearly every case, the pervasive release confers no benefit on the employer because the employee has no other claim. In the typical case, the release is valueless—the employer receives nothing of monetary value, and the employee relinquishes nothing of monetary value. The general release is usually an instrument to ensure peace of mind to the employer's otherwise worried mind. In the occasional case, however, an unknown claim accrues to the employee. For example, suppose an employee of a widget factory sues the employer for unpaid wages, the parties settle for

$500.00, and the employee agrees to a pervasive release.  Years later, the employee

discovers that a chemical used to manufacture widgets has caused serious injury.  In

this instance, the employee's release of the unknown claim (if effective) both confers an

undeserved and disproportionate benefit on the employer and effects an unanticipated,

devastating, and unfair deprivation on the employee.  The release absolves the

employer of an ominous contingent liability in exchange for $500.00 (which, in any

event, the employer unconditionally owed to the employee).

An employee who executes a broad release effectively gambles, exchanging

unknown rights for a few hundred or a few thousand dollars to which he is otherwise

unconditionally entitled.  In effect, the employer requests a pervasive release in order to

transfer to the employee the risk of extinguishing an unknown claim.  In the language of

Hydradry, a pervasive release is a "side deal"[4] in which the employer extracts a

gratuitous (although usually valueless) release of all claims in exchange for money

unconditionally owed to the employee.  (If an employee signs a pervasive release as

part of a "side deal" and later discovers a valuable but released claim, the employee

perhaps looks for compensation from the attorney who advise the employee to grant the

release.)  Although inconsequential in the typical civil case (for which settlement

requires no judicial review), an employer is not entitled to use an FLSA claim (a matter

arising from the employer's failing to comply with the FLSA) to leverage a release from

liability unconnected to the FLSA.

---

[4] See Hydradry, 2010 WL 1539813, at 6-8 (finding objectionable the existence of a "side deal" in settlement of an FLSA dispute).

Lynn's Food's imposition of the duty to scrutinize an FLSA compromise necessarily implies the court's duty to scrutinize the claims and the defenses presented by the pleadings.  An employee seeking to vindicate his FLSA rights often desperately needs his wages,[5] and both the employee and the employer want promptly to resolve the matter.  In a claim for unpaid wages, each party estimates the number of hours worked and the plaintiff's wage (i.e., establishes a range of recovery), and the court evaluates the relative strength of the parties' legal argument asserted in the particular case.  However, in an FLSA action, neither party typically attempts to value the claims not asserted by the pleadings but within the scope of a pervasive release—that is, those "known and unknown," or "past, present, and future," or "statutory or common law," or other claims included among the boiler plate, but encompassing, terms unfailingly folded into the typical general release.[6]  Absent some knowledge of the value of the released claims, the fairness of the compromise remains indeterminate.  See, e.g., 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 12:15, at 313 (4th ed.

---

[5] See D.A. Schulte v. Gangi, 328 U.S. 108, 114 (1946) ("We think the purpose of the [FLSA] . . . was to secure for the lowest paid segment of the nation's workers a subsistence wage[;] . . . neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage.  Such a compromise thwarts the public policy of minimum wages, promptly paid, embodied in the [FLSA], by reducing the sum selected by Congress as proper compensation for withholding wages.").

[6] Judicial review of a class action settlement provides an instructive example of the problem with a release of claims outside the pleadings.  As a "fiduciary" of the absent class members, a judge reviewing a class action settlement scrutinizes the scope of the release.  For example, suppose a class of bank customers sues the bank for charging an excessive fee in connection with a loan.  The bank may seek a pervasive release, such as a release of "any claim, known or unknown, arising from" a class member's loan.  The judge will reject the pervasive release, which extinguishes without compensation the rights of class members (if, for example, the bank fraudulently conceals other fees).  The release of an unknown claim unrelated to the claims asserted in the complaint frustrates an assessment the fairness of the benefit provided to the class.  See Kakani v. Oracle Corp. 2007 WL 1793774 (N.D. Cal. June 19, 2007) (rejecting a class action settlement because of the "draconian scope" of the proposed release); see also Vasquez v. Coast Valley Roofing, Inc., 670 F. Supp. 2d 1114, 1126 (E.D. Cal. 2009) (finding a class action settlement fair in part because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants.").

2002) ("Of course, in order independently and objectively to evaluate the adequacy of the entire settlement . . ., the court must possess sufficient evidence or information to weigh the strengths and weaknesses of the additional . . . claims.").

In sum, a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer.  In the typical case, no unknown claim accrues to the employee and the pervasive release effects no change to the legal relationship of the parties.  In other words, in the typical case, the pervasive release is superfluous and can be stricken without objection from either the employee or the employer.  In the occasional case, an unknown claim accrues to the employee and the employer receives a release from a contingent liability in exchange for a modest payment of wages unconditionally owed to the employee.  The employer who obtains a pervasive release receives either nothing (if no claim accrues) or a windfall at the expense of the unlucky employee.  In either instance, the employee bears the risk of loss, and the employer always wins—a result that is inequitable and unfair in the circumstance.  The employer's attempt to "play with house money" fails judicial scrutiny.

### IV. Conclusion

Lynn's Food requires more than a "rubber stamp" of an FLSA compromise; the district court must assure the "fairness" of the proposed compromise.   Although the parties' desire for complete "disengagement" is understandable, a pervasive release in settlement of an FLSA action is both unfair and incapable of valuation.  A compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny.

In the present case, although the parties' compromise appears otherwise reasonable, the pervasive and unbounded scope of the release is unfair and precludes a valid evaluation of the compromise. Accordingly, the motion (Doc. 16) for approval of the compromise is **DENIED**, and the settlement agreement (Doc. 16-1) is **REJECTED**. On or before **Friday, August 20, 2010**, the parties must either (1) move for approval of an amended settlement agreement or (2) submit a case management report proposing an amended case management schedule.

ORDERED in Tampa, Florida, on August 6, 2010.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE